UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEVIN CEDENO,

        Petitioner,

   v.

WARDEN FILSON, et al.,

        Respondents.

Case No. 3:17-cv-00036-LRH-VPC

**ORDER**

The court directed petitioner to show cause why this action should not be dismissed as untimely (ECF No. 6). Petitioner has filed a response (ECF No. 8). Petitioner does not persuade the court, and the court dismisses the action.

To summarize the relevant procedural history, for the purpose of 28 U.S.C. § 2244(d)(1)(A) petitioner's judgment of conviction became final on February 4, 2015. Petitioner filed his state habeas corpus petition on March 10, 2016. This caused two problems. First, the federal one-year period already had expired, and no time remained to be tolled. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Second, the state petition was untimely under Nev. Rev. Stat. § 34.726(1), which in turn meant that it was ineligible to toll the federal period of limitation under 28 U.S.C. § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

In his response, petitioner argues that he should receive equitable tolling from December 22, 2015, when he mailed a notice of habeas corpus filing to the state district court, and that the limitation clock should have stopped from the time of mailing. The court disagrees. Nevada has rejected the mailbox rule for the filing of post-conviction habeas corpus petitions in state court. A

state post-conviction habeas corpus petition is filed when the state court receives it, and not before. Gonzales v. State, 53 P.3d 901, 904 (2002). Consequently, a state post-conviction habeas corpus petition is not properly filed within the meaning of 28 U.S.C. § 2244(d)(2), and statutory tolling does not commence, until the state court receives the petition. Orpiada v. McDaniel, 750 F.3d 1086, 1089-90 (9th Cir. 2014). By the time petitioner actually filed his state habeas corpus petition, both the state statute of limitation and the federal statute of limitation had run.

Once petitioner had actually filed his state habeas corpus petition, he also would not have been eligible for equitable tolling. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). Petitioner cannot satisfy the second element. The very fact that petitioner was pursuing a state habeas corpus petition meant that nothing was preventing him from litigating.

Furthermore, the very fact that petitioner was pursuing a state habeas corpus petition meant that petitioner knew he had a problem with the timeliness of the action. Question 19 on the required petition form asked petitioner whether he filed the petition more than one year after entry of the judgment of conviction or after the decision on direct appeal.[1] See Nev. Rev. Stat. § 34.735. "Application of the statutory procedural default rules to postconviction habeas petitions is mandatory." State v. Dist. Ct. (Riker), 112 P.3d 1070, 1074 (Nev. 2005). In state court, petitioner has the burden of pleading and proving facts to demonstrate good cause to excuse the delay. State v. Haberstroh, 69 P.3d 676, 681 (Nev. 2003). If petitioner, upon reading the state petition form, immediately filed a federal habeas corpus petition in this court, then he might have been able to show that he was being diligent. By waiting while he was pursuing an untimely state habeas corpus petition, he failed to show that diligence.

In a document titled "Ex-Parte Communication" (ECF No. 11), petitioner also argues that he is actually innocent of the deadly-weapon enhancement. Petitioner was convicted of at least

---

[1] The relevant part of the question for petitioner was whether he had filed the petition within one year after entry of the judgment of conviction, because he did not appeal.

2

one count each of robbery with the use of a deadly weapon and burglary while in possession of a deadly weapon. Under state law, the punishments for these crimes are different. A person convicted of robbery with the use of a deadly weapon receives a prison sentence for the principal crime and an additional, consecutive prison sentence for the use of a deadly weapon. Nev. Rev. Stat. §§ 200.380(2), 193.165(1), 193.165(2). A person convicted of burglary while in possession of a deadly weapon receives one prison sentence. Nev. Rev. Stat. § 205.060(4). The deadly-weapon enhancement statute defines what a "deadly weapon" is. Nev. Rev. Stat. § 195.165(6). The crime of burglary while in possession of a deadly weapon borrows the definition of "deadly weapon" from that statute. Berry v. State, 212 P.3d 1085, 1091-93 (Nev. 2009), abrogated on other grounds by State v. Castaneda, 245 P.3d 550 (Nev. 2010); Funderburk v. State, 212 P.3d 337, 339-40 (Nev. 2009).

The weapon in this case was an airsoft gun. An airsoft gun uses a spring or air pressure to expel a metal or plastic pellet, perhaps a pellet filled with paint. The deadly-weapon enhancement statute defines a "deadly weapon" as, in relevant part, "A dangerous or deadly weapon specifically described in NRS 202.255, 202.265, 202.290, 202.320 or 202.350." Nev. Rev. Stat. § 193.165(6)(c) (emphasis added). Section 202.265 prohibits possession of a deadly weapon in a child care facility, on school property, and in a school vehicle, but that limitation "applies only to the crime it creates and does not limit its use as a definition of a 'deadly weapon.'" Berry, 212 P.3d at 1092. At the time of petitioner's crime, § 202.265 defined two devices that could apply to the airsoft gun that petitioner used. First was "[a]ny device used to mark any part of a person with paint or any other substance." Nev. Rev. Stat. § 202.265(1)(f) (2014). Second, the definition of "firearm" included "any device from which a metallic projectile, including any ball bearing or pellet, may be expelled by means of spring, gas, air or other force." Nev. Rev. Stat. § 202.265(5)(b) (2014).[2] By these two definitions, the airsoft gun that petitioner used was a "deadly weapon" within the meaning of Nev. Rev. Stat. §§ 193.165 and

---

[2] Section 202.265 was amended effective July 1, 2015, almost six months after petitioner was convicted. It creates a new category of "pneumatic gun," which is "any implement designed as a gun that may expel a ball bearing or a pellet by action of pneumatic pressure. The term includes, without limitation, a paintball gun that expels plastic balls filled with paint for the purpose of marking the point of impact." Nev. Rev. Stat. § 202.265(5)(c) (2015).

205.060(4). Section 202.290 prohibits the discharge of an "air gun" in a public place or in any place where any person might be endangered. Again, the limitation in § 202.290 applies only to the crime described in that statute and not to the definition of "deadly weapon" in § 193.165(6)(c). Berry, 212 P.3d at 1092. If the matter went to trial, no reasonable juror would have found petitioner not guilty of the use of a deadly-weapon. Petitioner has not demonstrated actual innocence. See McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013).

Petitioner's arguments under McIntyre v. State, 764 P.2d 482 (Nev. 1988), do not persuade the court. In that case, the Nevada Supreme Court held that a toy gun, absent proof of deadly capabilities, could not support the deadly-weapon enhancement. Id. at 483. First, the law defining what a deadly weapon is has changed since the time of McIntyre. Second, the version of § 193.165 in effect at the time required an enhanced sentence for the use of a firearm or other deadly weapon. Id. At the time, the version of Nev. Rev. Stat. § 202.253 in effect at the time included a definition of "firearm" that meant "any weapon with a caliber of .177 inches or greater from which a projectile may be propelled by means of explosive, spring, gas, air or other force." Id. at 483 & n.2. That definition would incorporate an airsoft gun. Even if McIntyre applies to petitioner's case, it would mean that petitioner is guilty of the deadly-weapon enhancement.

Petitioner's actual innocence argument also fails to address the charges that the prosecution dropped in exchange for his guilty plea. In the justice court, Case No. 14F15221X, petitioner was charged with thirteen counts of burglary while in possession of a deadly weapon and thirteen counts of robbery with the use of a deadly weapon.[3] Petitioner pleaded guilty to nine counts of burglary while in possession of a deadly weapon and one count of robbery with the use of a deadly weapon. Even if petitioner was actually innocent of the use of a deadly weapon, the prosecution dropped four counts of burglary and twelve counts of robbery in exchange for petitioner's plea. Even without the deadly-weapon enhancements, petitioner faced a far longer time in prison with convictions for all twenty-six non-enhanced counts than he actually received with the ten enhanced counts. "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to

---

[3] https://lvjcpa.clarkcountynv.gov/Anonymous/CaseDetail.aspx?CaseID=11519558 (last visited April 13, 2018).

4

those charges." Bousley v. United States, 523 U.S. 614, 624 (1998). By not addressing the charges that the prosecution dropped, petitioner has not demonstrated actual innocence.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Reasonable jurists would not find the court's determinations on equitable tolling and actual innocence to be debatable or wrong. Furthermore, it is not debatable that the petition states a valid claim of the denial of a constitutional right. The sole claim for relief is that counsel provided ineffective assistance by failing to investigate whether an airsoft gun met the statutory requirements of a deadly weapon. As shown above, even if counsel should have investigated the issue, petitioner suffered no prejudice because an airsoft gun did meet the statutory requirements of a deadly weapon. The court will not issue a certificate of appealability.

This order moots petitioner's request for a status check (ECF No. 10).

IT THEREFORE IS ORDERED that this action is **DISMISSED** with prejudice because it is untimely. The clerk of the court shall enter judgment accordingly and close this action.

IT FURTHER IS ORDERED that a certificate of appealability will not issue.

IT FURTHER IS ORDERED that petitioner's request for a status check is **DENIED** as moot.

DATED this 30th day April, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE